Merrimack, }
Oct. 31, 1922. }

### JOHN W. BARKER v. OSCAR L. YOUNG & a.

Under the constitution, Part II, *art.* 28, citizenship for seven years is a requisite
of election to the office of senator.

A certiorari is granted not as a matter of right, but as a matter of discretion,
which is governed by the justice of the case.

PETITION, for a writ of certiorari. The petitioner was nominated
for state senator at the primary election held in September, 1922.
Objection to his name being printed upon the ballot was made by
one H. C. Field, a voter in the district; and the commissioners de-
cided that Barker was ineligible because he had not been a citizen
for seven years, and declared a vacancy upon the ticket. There-
upon Barker filed this petition in the superior court against the
ballot commissioners and the secretary of state. The commis-
sioners answered admitting the facts but denying any jurisdiction
of the court. The secretary of state answered that he was bound by
the action of the commissioners. Transferred without a ruling from
the October term, 1922, of the superior court by *Sawyer,* J.

*Benjamin W. Couch, James W. Remick, Nathaniel E. Martin* and
*Scott Sloane (Mr. Remick* orally), for the plaintiff.

*Joseph S. Matthews,* assistant attorney-general, for the defendants.

*Fred C. Demond,* by brief and orally, for Field.

PEASLEE, J. This is a petition for a writ of certiorari, and one
question presented is whether, upon the allegations of the petition,
any injustice has been done to the petitioner by the action complained
of. "In proceedings of this character relief is granted, not as a matter
of right, but as a matter of discretion, which is governed by the jus-
tice of the case. *Petition of Landaff,* 34 N. H. 163, 176; *Boston &
Maine R. R.* v. *Folsom,* 46 N. H. 64. . . . It is for the petitioner to

show not merely that error of law has been committed, but that injustice has been done thereby." *Dinsmore* v. *Mayor*, 76 N. H. 187, 191.

The petition alleges that the petitioner, although not naturalized until 1920, was a resident of the state for more than seven years last past. The question presented is whether upon these facts he is eligible to the office of state senator. If he is not so eligible, no right of his has been infringed which is of a character to call for the issuance of this writ. If he had a technical right to have his name appear upon the ballots, to be voted for and, if apparently elected, to appear and present before the senate an unfounded claim for the seat which he could not hold, it is apparent that such right is not one which the discretionary powers of the court will be used to promote. The result of such a course of procedure would be a vacancy in the senate, necessitating a special election, or depriving the district of representation. Upon the other hand, the events of which complaint is made afford the people of the district an opportunity to elect a duly qualified senator at the regular election, free from the complexities and chances of failure to elect incident to the appearance upon the ballot of the name of one not qualified to hold the office.

In this situation it is deemed advisable to take up the question of the nature of the alleged wrong to the petitioner, before consideration is given to the question whether the writ could issue in any event.

The constitution provides: "[Art. 26 (27).] The freeholders and other inhabitants of each district, qualified as in this constitution is provided, shall [biennially], give in their votes for a senator at some meeting holden in the month of [November].

[Art. 27 (28).] The senate shall be the first branch of the legislature, and the senators shall be chosen in the following manner, viz.: Every male inhabitant of each town, and parish with town privileges, and places unincorporated, in this state, of twenty-one years of age and upward, . . . shall have a right . . . to vote, in the town or parish wherein he dwells, for the senator in the district whereof he is a member.

[Art. 28 (29).] *Provided, nevertheless,* that no person shall be capable of being elected a senator who is not of the age of thirty years, and who shall not have been an inhabitant of this state for seven years immediately preceding his election; and, at the time thereof, he shall be an inhabitant of the district for which he shall be chosen." Const. of N. H., Part Second, articles 26–28.

The question turns upon the meaning of the word "inhabitant" as used in article 28 to describe the qualifications of a senator. The same word is used in each of the two preceding articles to describe the qualifications of voters. A like use is made in each of the three succeeding articles. That the word as thus used was intended as a designation of citizenship, cannot be seriously doubted. The justices of the court so advised the legislature in 1835. *Opinion of the Justices,* 8 N. H. 573, 575. "Citizenship is an implied qualification." *Attorney-General* v. *Colburn,* 62 N. H. 70, 72; *Davis* v. *School District,* 44 N. H. 398, 405; *Orr* v. *Quimby,* 54 N. H. 590, 620.

This being so, the conclusion that the same meaning attaches to the same term when used in the same connection in the intervening article is the most reasonable one to adopt. The article is intimately related to those just preceding and following it. Under such circumstances it would require very strong evidence to establish that while inhabitant meant citizen in articles 26, 27, 29, 30 and 31, it included aliens when used in article 28.

The argument that the decisions above referred to relate to the clause in the constitution that voters must be "qualified as in this constitution is provided," cannot be sustained. The qualifications provided in the constitution were that the voter should be of the male sex and pay a poll tax. No others are prescribed, and of course no others are included by a reference to those prescribed. The decisions are what they purport to be — interpretations of the meaning of the word "inhabitant."

If it were true that the word was used in a broader sense in other parts of the constitution, it would not be conclusive as to the use here. *Clough* v. *Clough, post,* 462 and cases cited. Whatever force there might be in the argument from a different use elsewhere in the constitution would be practically nullified by the accordant use which precedes and follows and is closely connected with the article in question.

But there is no such conflicting use of the word. The provision as to a census of the inhabitants (Part II, *art.* 9) came in by amendment in 1877. Laws 1877, *c.* 33. On the other hand, the phrases "inhabiting or residing" (Part II, *art.* 4) and "inhabitants of and residents within, the said state" (Part II, *art.* 5) are strongly confirmatory evidence of the proposition that when the constitution was adopted the word inhabitant was used as the equivalent for citizen.

The same conclusion was reached as to substantially the same language in the original constitution of Massachusetts, of which ours

is practically a copy. *Opinion of the Justices,* 7 Mass. 523; *Harvard College* v. *Gore,* 5 Pick. 370; *Opinion of the Justices,* 122 Mass. 594.

Upon the face of the document to be interpreted, and in view of the decisions referred to, the meaning of the word inhabitant, when used to describe the qualifications of a senator, is that he must be a citizen for seven years.

As it thus appears that no injustice has been done the petitioner by the action complained of, his petition for a writ of certiorari must be dismissed. It is essential that a decision be rendered speedily if it is to be of any practical use. Because of this situation, there is no occasion to consider whether the ballot commissioners exceeded their jurisdiction in passing upon the legal qualifications of a candidate nominated at the primary election, or whether, if they did err in that respect, the error is correctible by the court.

*Petition dismissed.*

All concurred.