*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1180**

Jennifer L. DeCook, et al.,
Respondents/Cross-Appellants,

vs.

Olmsted Medical Center, et al.,
Appellants,

Kenneth M. Palmer, M.D., Cross-Respondent,
Jack F. Perrone, M.D., et al., Cross-Respondents,
Ashley Morrow, Cross-Respondent.

**Filed April 27, 2015
Affirmed; motion granted
Stoneburner, Judge[*]**

Olmsted County District Court
File No. 55-CV-14-423

Stephen C. Offutt, Patrick A. Thronson, (pro hac vice), Janet, Jenner & Suggs, LLC, Baltimore, Maryland (for respondents/cross-appellants Jennifer L. DeCook, et al.)

Mark Solheim, Paula Duggan Vraa, Margaret Jennings Meier, Larson King, LLP, St. Paul, Minnesota (for appellants Olmsted Medical Center, et al., and cross-respondent Ashley Morrow)

Douglas S. Knott, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Milwaukee, Wisconsin (for cross-respondent Kenneth M. Palmer)

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Robert G. Benner, Dunlap & Seeger, Rochester, Minnesota; and

Robert M. Chemers (pro hac vice), Pretzel & Stouffer, Chartered, Chicago, Illinois (for cross-respondents Jack F. Perrone, et al.)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Stoneburner, Judge.

## UNPUBLISHED OPINION

**STONEBURNER**, Judge

In this appeal and related appeal, appellants challenge the district court's denial of their motion to dismiss respondents/cross-appellants' malpractice action for insufficiency of process, and respondents/cross-appellants appeal the district court's dismissal of their malpractice action against the non-appealing defendants for ineffective service of process. We affirm.

## FACTS

Respondents/cross-appellants Jennifer DeCook, Ryan DeCook, and Mya DeCook (DeCooks) assert malpractice claims against appellants Olmsted Medical Center (OMC), Darlene Pratt, R.N., and Brenda Hanson, R.N., and against defendants Kenneth Palmer, M.D., Jack Perrone, M.D., Kimberly McKeon, M.D., and Ashley Morrow, R.N. DeCooks' claims arise out of the birth and delivery of Mya DeCook on January 21-22, 2010. DeCooks are represented by Minnesota licensed attorney Stephen Offutt and his

associate Patrick Thronson, who is officed in Maryland and is not licensed to practice law in Minnesota.[1]

DeCooks' attorneys contacted OMC's Risk Management Department in early 2014 concerning service of process on OMC, the nurses, and the doctors. The inquiry was directed to OMC's Compliance Officer, Barbara Graham, R.N. Graham told Offutt and Thronson that she was authorized to accept service on behalf of the clinic and all of the named individuals, and she agreed to accept service via e-mail.

Offutt reviewed the summons and complaint on January 8, 2014. The single signature line on each of the documents lists both Offutt and Thronson, states Offutt's Minnesota license number, indicates that "pro hac vice to be applied for" Thronson, and gives the address and telephone number for their law firm in Maryland. Because Offutt was out of the state of Maryland on other business when he reviewed the documents, he directed Thronson to sign the documents on Offutt's behalf and serve them on Graham by e-mail. Thronson signed the summons and complaint with his name only above the signature line for both attorneys and sent them to Graham by e-mail.

On January 14, 2014, Graham informed Thronson that the person named on the documents and on the Minnesota Secretary of State's website as the registered agent for service of process had retired. Thronson revised the captions on the documents and again sent the documents to Graham by e-mail along with two copies of an acknowledgment of service. On the same day, Thronson sent copies of the documents to the relevant county sheriffs via express mail in order to effectuate service in the event that the arrangement

---

[1] Thronson was admitted pro hac vice on March 21, 2014.

for service by e-mail failed. On January 15, 2014, Graham signed and returned an acknowledgement of service on behalf of OMC and all of the named individuals. Offutt and Thronson then directed the sheriffs to return the documents that had been sent to them.

On January 31, 2014, OMC and the named individuals filed a joint and separate motion to dismiss under Minnesota Rule of Civil Procedure 12.02(b)-(d). Counsel who signed the motion declined to provide Thronson with information about the bases for the motion. DeCooks' attorneys resent the same documents to the relevant sheriffs for service. On February 24, 2014, Pratt was personally served. On February 27, 2014, Hanson was personally served, and on the same day, a deputy left copies of the documents with Tammy Wing, an Executive Assistant at OMC, in an attempt to serve OMC, Palmer, McKeon, Perrone, and Morrow.

On March 4, 2014, OMC and the named individuals filed a memorandum supporting their motion to dismiss asserting that process, signed only by an attorney not licensed to practice in Minnesota, was defective and that service at an individual's place of employment is ineffective. Offutt then signed new summonses and a new complaint and mailed them to the relevant sheriffs for service.

On March 25 and 26, Pratt and Hanson were personally served. On March 31, a deputy again left copies of the documents with Wing in an attempt to serve OMC, Palmer, McKeon, Perrone, and Morrow.

After a hearing on the motions to dismiss, the district court concluded that the lack of Offutt's signature on the summonses was a technical defect, exercised its discretion to

4

permit amendment of the summonses, and denied the motions to dismiss for ineffective process. The district court concluded that service on OMC, Pratt, and Hanson was effective and denied their motions to dismiss based on ineffective service of process. But the district court concluded that service on the remaining named individuals by leaving the documents at their place of employment was ineffective and granted the motions of Palmer, McKeon, Perrone, and Morrow to dismiss for ineffective service of process. These appeals followed. Before oral argument on appeal, appellants moved to strike portions of "Respondents/Cross Appellants' Reply to Joint Response of [non-appealing defendants] to Cross-Appeal," arguing that the challenged portion of the brief did not address issues presented by the cross-appeal. Ruling on this motion was reserved for the panel.

## D E C I S I O N

### I. Appellants' motion to strike is granted.

A cross-appellant's reply brief must be limited to the issues presented by the cross-appeal. Minn. R. Civ. App. P. 131.01, subd. 5(d)(4). The first paragraph of the "argument" section of DeCooks' reply brief in its cross-appeal through line three on page nine of that brief violate the rule by referring only to appellants' arguments despite the fact that DeCooks had previously filed a response to these arguments. Appellants' motion to strike these portions of the brief is granted.

**II.    The district court did not err by determining that lack of Offutt's signature on the summons and complaint is a curable defect.**

Appellants argue that the district court erred by failing to conclude that lack of a Minnesota licensed attorney's signature on the summons is an incurable defect making the summons void and requiring dismissal of DeCooks' action.[2]  Whether a defect in a pleading can be cured involves interpretation of applicable rules of civil procedure. Interpretation of a procedural rule is a question of law, reviewed de novo. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014).  Interpretation of a rule involves looking first to the plain language of the rule and its purpose and applying the language of the rule when it is plain and unambiguous.  *Id.*

To maintain or conduct an action in Minnesota, an attorney must be licensed and a member of the Minnesota bar.  Minn. Stat. § 481.02, subd. 1 (2014); *see also Barnes v. Verry*, 154 Minn. 252, 255, 191 N.W. 589, 591 (1923) (stating that out-of-state attorneys "have no authority to commence actions in the courts of this state").  Minnesota Rule of Civil Procedure 4.01 requires a summons to be "subscribed by the plaintiff or the plaintiff's attorney."  Plainly, lack of Offutt's signature on the summons and complaint made those documents defective.

Appellants rely on *Francis v. Knerr*, 149 Minn. 122, 182 N.W. 988 (1921), to support their argument that the lack of a Minnesota licensed attorney's signature is an incurable defect rendering the summons void. *Francis* involved an appeal from an order

---

[2] Appellants also assert that the summons is void because it did not include an address in Minnesota where they could serve the answer, but this claim was not raised before the district court and is therefore waived on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

setting aside a judgment on the ground that the court had no jurisdiction to render it. *Id.* at 123, 182 N.W. at 989. There, a North Dakota attorney, one of two plaintiffs in the lawsuit, signed the summons. *Id.* The supreme court, noting that the signature was valid as to the attorney-plaintiff who signed, concluded that the signature was "invalid only as to his coplaintiff, and merely resulted in a defect of parties plaintiff which could be taken advantage of only by answer or demurrer." *Id.* at 123-24, 182 N.W. at 989 (stating that the statute then controlling "has been given an extremely liberal construction to avoid defeating an action on account of technical and formal defects which could not reasonably have misled or prejudiced the defendant"). *Francis* does not hold that a signature defect cannot be cured: *Francis* states that a defect in the summons is only jurisdictional when there is a departure from what is required "in any substantial matter affecting the rights of a defendant." *Id.* at 124, 182 N.W. at 989 (quotation omitted). In *Francis*, the supreme court affirmed the district court order voiding the summons not because of the signature defect but because the address given for service of the answer did not exist and the person on whom it was required to be served could not be found within the state, thereby substantially prejudicing defendant's ability to answer. *Id.* at 125-26, 182 N.W. at 990.

Neither *Francis* nor any other case or rule provides authority for appellants' assertion that the signature defect on the summons is an incurable defect that deprives the district court of jurisdiction. To the contrary, in *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307, 309-10 (Minn. 2005), the supreme court adopted this court's holding that lack of the appropriate signature on a complaint is not jurisdictional and is

7

curable. Although *Save Our Creeks* involved interpretation of Minn. R. Civ. P. 11, we find the reasoning particularly persuasive under the unique circumstances of this case in which the summons and complaint fully identified the involved Minnesota licensed attorney. That the documents were signed only by Thronson did not affect the substantial rights of appellants, and the district court did not err by concluding that the technical error of the omission of Offutt's signature constituted a curable defect.

**III.    The district court did not abuse its discretion by permitting respondents to cure the defect.**

Minn. R. Civ. P. 4.07 provides, in relevant part, that a district court, in its discretion, may at any time allow any summons to be amended, "unless it clearly appears that substantial rights of the person against whom the process issued would be prejudiced thereby." Appellants argue that permitting the amendment prejudiced their substantial rights because it deprived appellants of a statute-of-limitations defense. But appellants' argument on this point rests on their previous argument, rejected above, that lack of Offutt's signature rendered the summons void and deprived the district court of jurisdiction over them. And the supreme court has rejected a similar argument that permitting an amendment to a summons was an abuse of discretion because it deprived a plaintiff of a statute-of-limitations defense. *Nelson v. Glenwood Hills Hospitals*, 240 Minn. 505, 62 N.W.2d 73 (1953). In *Nelson*, plaintiffs sought to amend a complaint to name the correct owner of the hospital where the alleged injury occurred, and the district court permitted the amendment. *Id.* at 509, 62 N.W.2d at 76. On appeal, the newly named hospital argued that no service was made on it because the plaintiffs only moved

to amend the complaint. *Id.* at 511, 62 N.W.2d at 77. The supreme court rejected the hospital's argument that allowing amendment of the summons would deprive it of a statute-of-limitations defense, stating that "when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." *Id.* at 79, 62 N.W.2d at 515 (quoting *New York Cent. & H.R.R. Co. v. Kinney*, 260 U.S. 340, 346, 43 S. Ct. 122, 123 (1922)).

The error in this case was technical. Appellants were not only fully aware of the claims and specified conduct alleged, but knew Offutt represented DeCooks and knew he is licensed to practice in Minnesota. We conclude that the district court did not abuse its discretion by permitting the summons to be amended by the addition of Offutt's signature.

Appellants additionally argue that the district court abused its discretion by permitting amendment because respondents did not meet the four-part test established in *Save Our Creeks* for permitting amendment to a complaint signed by a non-lawyer on behalf of a corporation. The district court, noting that this matter does not involve the signature of a non-lawyer on behalf of a corporation, found that test inapplicable.

In *Save Our Creeks*, the supreme court held "that an amendment to add an attorney's signature to a corporation's complaint should be permitted when . . . (1) the corporation acts without knowledge that its action was improper; (2) upon notice, the corporation diligently corrects its mistake by obtaining counsel . . . ; (3) the nonattorney's participation in the action is minimal; and (4) the nonattorney's participation results in no

9

prejudice to the opposing party." 699 N.W.2d at 311. We agree with the district court that the *Save Our Creeks* test does not apply to the circumstances of this case, which does not involve a corporation and does involve a fully identified Minnesota lawyer who approved the summons and complaint and authorized his signature on the documents before they were served.[3] The supreme court devised a four-part test in *Save Our Creeks* for a particular situation that is not present here, and the test does not adapt well to the present situation. The district court stated: "The bottom line is that justice is served by allowing [DeCooks] to cure their defective summonses." We conclude that the district court acted within its discretion by permitting the amendment.

**IV.    The district court did not err by dismissing DeCooks' action against Palmer, Perrone, McKeon, and Morrow for insufficient service of process.**

Minn. R. Civ. P. 4.03(a) provides, in relevant part, that if an "individual has, pursuant to statute, consented to any other method of service or appointed an agent to receive service of summons . . . , service may be made in the manner provided by such statute."[4] In their related appeal, DeCooks argue that because Graham represented to them that she could accept service on behalf of all of the defendants, service by e-mail on Graham was effective service on Palmer, Perrone, McKeon, and Morrow (non-appealing defendants). Whether service of process is effective is a question of law that this court

---

[3] We note that the district court found that DeCooks, once aware of the defect, "worked diligently to cure the defect" and that the lack of Offutt's signature did not prejudice appellants. These findings are not clearly erroneous.

[4] It is undisputed that service on the non-appealing defendants was not attempted under any other provision in Minn. R. Civ. P. 4.03(a). And DeCooks do not argue that service at a defendant's place of business is effective. *See Thiele*, 425 N.W.2d at 584 (holding that service at a defendant's place of business does not comply with the rule and is ineffective).

reviews de novo. *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008). "If the manner of service is not authorized by rule 4, it is not effective." *Allstate Ins. Co. v. Allen*, 590 N.W.2d 820, 822 (Minn. App. 1999).

DeCooks do not claim that Graham was appointed an agent to receive service of summons by any of the non-appealing defendants pursuant to statute, but argue that appointment need not be pursuant to statute, citing *Allstate Ins. Co. v. Allen* for the proposition that a non-statutorily appointed agent may accept service. *Id.* But *Allstate* does not involve the question of whether an attorney was statutorily appointed to accept service: the case involved a lack of any evidence that Allen appointed his attorney to accept service. *Id.* Likewise, there is no evidence that any of the non-appealing defendants, in any manner, appointed Graham to accept service on his or her behalf. And "[a]n attorney may not rely on an employee's claim that she is authorized to accept service; the attorney must examine the law to determine who is authorized to accept service." *Larson v. New Richland Care Ctr.*, 520 N.W.2d 480, 482 (Minn. App. 1994).

DeCooks assert that non-appealing defendants waived service: but waiver requires both knowledge of a right and intent to waive the right. *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011). There is no evidence in the record that any of the non-appealing defendants intended to waive his or her right to service as prescribed by rule 4.

DeCooks also argue that the district court abused its discretion by denying their claim that non-appealing defendants are estopped from asserting ineffective service. A district court has discretion to estop a party from asserting an ineffective-service defense,

and its decision will not be reversed absent a clear abuse of discretion. *Patterson v. Wu Family Corp.*, 594 N.W.2d 540, 549 (Minn. App. 1999), *rev'd on other grounds*, 608 N.W.2d 863 (Minn. 2000).

DeCooks argue that they have met the elements of estoppel and that non-appealing defendants have not argued that Graham was not appointed as an agent to receive service. But non-appealing defendants correctly counter that DeCooks cannot reasonably rely on Graham's assertions to create an agency relationship. We agree.

The essential elements of estoppel include: "(1) a misrepresentation or concealment of material facts; (2) the party claiming the benefit of the estoppel does not know the truth regarding those facts; and (3) detrimental reliance by the party asserting the estoppel." *Id.* (citing *Olson v. Ronhovde*, 446 N.W.2d 690, 692-93 (Minn. App. 1989)). Additionally, the misrepresented or concealed facts must be known to the party to be estopped, or at least necessarily imputed to that party. *Olson*, 446 N.W.2d at 692. A party's reliance must be reasonable. *Anderson v. Minn. Ins. Guar. Ass'n*, 534 N.W.2d 706, 709 (Minn. 1995); *cf. W. Concord Conservation Club, Inc. v. Chilson*, 306 N.W.2d 893, 896 (Minn. 1981) ("Negligence by the party invoking [estoppel] may deprive him of its protection." (quotation omitted)).

The district court correctly found that DeCooks could not reasonably have relied on Graham's assertion of authority to accept service. And there is no evidence of actual or apparent agency, let alone appointment to accept service of summons. Apparent authority requires manifestation by the actions of a principal that another is his agent and knowledge of such manifestation by the person dealing with the supposed agent.

*Schneider v. Buckman*, 412 N.W.2d 787, 790 (Minn. App. 1987), *rev'd on other grounds*, 433 N.W.2d 98 (Minn. 1988).  There is no evidence of such manifestations in this record. The district court did not abuse its discretion by rejecting DeCooks' estoppel argument.

**Affirmed; motion granted.**